**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

HEATHER HIRSCHHORN, *et al.*   )
            )
    Plaintiffs,     )
            )  No.  13-CV-08387
    v.        )
            )  Judge Ronald A. Guzman
UNITE HERE, LOCAL 1, and   )
CHICAGO HOTEL MANAGEMENT )
SERVICES, LLC d/b/a     )
FAIRMONT CHICAGO MILLENNIUM )
PARK and/or FAIRMONT    )
CHICAGO,        )
            )
    Defendants.    )
            )

---

**PLAINTIFFS' BRIEF IN RESPONSE AND OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs Heather Hirschhorn, *et al.,* by and through their attorneys, The Law Office of Jeffrey Friedman, P.C., for their Brief in Opposition to Defendants' Motions to Dismiss state as follows:

**INTRODUCTION**

This action was brought by eighteen Plaintiffs, employees at the Fairmont Chicago Hotel and members of Unite Here Local 1, for breach of contract and breach of the duty of fair representation arising from violations of the Collective Bargaining Agreement (CBA) and the Labor Management Relations Act, 29 U.S.C. § 185, by Defendants Chicago Hotel Management Services Company, L.L.C. (the "Hotel"), and Unite Here Local 1 and 450 (the "Union"). These breaches are based upon the conduct of the Union Shop Steward, Misti Crull (referred to herein as the "Shop Steward" or as "Crull"), a cook employed by the Hotel. Plaintiffs allege that the Shop Steward engaged in a pattern of unfettered conduct that was adverse to the interests of the

union members she was obligated to support, all with the acquiescence and approval of the Defendants. The Plaintiffs clearly allege in paragraphs 51-97 of their First Amended Complaint that Crull failed to fulfill her responsibility to serve the interests of the Union and the Union members by regularly denying the Plaintiffs the opportunity to have their grievances heard, by denying their complaints regarding their employment conditions, and by rejecting their valid employment concerns. Am. Cmpt. ¶ 51-97. Furthermore, the Plaintiffs allege that Crull was allowed to continue to engage in this conduct, even after a petition signed by over 100 employees, including the Plaintiffs, brought this wrongful conduct to the attention of the Hotel's management. Am. Cmpt. ¶ 103, and Exhibit A and B thereto.

Crull is employed as a cook at the Hotel. She has no authority to supervise, manage, or otherwise set the terms and conditions of the Plaintiffs' employment. Nonetheless, the Hotel authorized and acquiesced in allowing Crull to act outside the authority of her duties as a cook and shop steward and ignored repeated and widely-supported complaints about her unauthorized managerial acts. As a result, the Plaintiffs have suffered economic and other damages in the form of reduced wages and lost time off, among other things.

To bring a direct action for the conduct of a shop steward for failing to discharge her responsibilities, a plaintiff must bring a "hybrid 301 claim," in which it must show both that there was a breach of contract by the employer and that the union breached its duty of fair representation. *DelCostello v. Int'l. Bhd. Of Teamsters*, 462 U.S. 151, 165 (1983). Generally, the Plaintiff must show the union's breach of its duty of fair representation first, and then proceed to demonstrate the employer's breach of the CBA. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *Flores v. Levy Co.*, 757 F.2d 806, 808 (1984). These two claims are interconnected. *DelCostello*, 462 U.S. 151 at 165. The policies

underlying federal labor law are considered in the determination of hybrid § 301 actions. *Id.* at FN14; *Vaca*, 386 U.S. 171 at 182. The Plaintiffs demonstrate herein that the Hotel breached the CBA by allowing Crull to act far outside of the role of a shop steward, and that the Union breached its duty of fair representation by failing to process grievances and failing to advocate on behalf of its members.

## ARGUMENT

### I. Standard of Review.

To prevail on a 12(b)(6) motion to dismiss, a moving party "must show that the plaintiff's complaint fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion is not meant to test the merits of the case. *MJ & Partners Restaurant Ltd. Pshp. v. Zadikoff,* 10 F. Supp. 2d 922, 926 (1998). "A complaint should not be dismissed for failure to state a claim, 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.*, citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). When considering a 12(b)(6) motion to dismiss, a district court will "accept all well-pled factual allegations in the complaint as true and draw all reasonable inferences from these facts in favor of the plaintiff." *Id.* at 924. "Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief"…in order to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson,* 355 U.S. 41 at 47. "The liberal notice pleading allowed by the federal rules requires the complaint to include the operative facts upon which a plaintiff bases his claim." *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 660 (1991). In order for a complaint to survive a 12(b)(6) motion to dismiss, it does not need to contain detailed factual allegations. *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009). Rather, Plaintiffs must provide grounds of their entitlement to relief, which must be more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id.* The Plaintiffs have met these requirements in its detailed 129-paragraph First Amended Complaint.

## II. Plaintiffs Have Exhausted the Administrative Remedies Available to Them.

### a. Plaintiffs Brought Grievances and Complaints to Crull to No Avail.

Plaintiffs attempted to submit grievances and complaints directly to Crull for her to communicate to the Union and the Hotel, but Crull repeatedly ignored them. Am. Cmpt. ¶¶ 51-73. For example, Plaintiffs Hirschhorn and Kirksey sought to file a grievance on August 18, 2013 about a change in gratuities policy. See Exhibit A hereto. On September 12, 2013 Plaintiff Hirschhorn again sought to file a grievance concerning an incident where she was sent home from work for not providing a doctor's note for a sick day she had taken. See Exhibit B hereto. Crull obstructed these grievances and failed to properly bring them to the Union. Am. Cmpt. ¶¶ 56-57. Plaintiffs further allege that Crull refused to address other legitimate concerns raised by the Plaintiffs, and responded in a managerial capacity without due authority, threatened to terminate employees, and then unduly monitored their arrivals and breaks, threatened punishment for those on FMLA leave, and worked with the Hotel to implement the very policies Plaintiffs and other employees complained of. Am Cmpt. ¶¶ 51-97. No action was taken in response to complaints about this conduct. Plaintiffs' attempts to exercise their rights to grieve and otherwise make complaints to their Shop Steward demonstrate that they have exhausted their administrative remedies, notwithstanding the fact that these grievances failed to receive appropriate consideration.

Plaintiff Hirschhorn has provided email correspondence between herself and Crull documenting Crull's inadequate response to her complaints regarding the new tip-sharing policy. Exhibit C. In addition and as indicated above, as attached to the First Amended Complaint, over 100 employees, including Plaintiffs, submitted two petitions to the Hotel: one to repeal the change to the Hotel's sick days and time off policies and one for Crull's removal, further evidencing the efforts made by the Plaintiffs to redress their employment concerns. Ex. A and B of the Am. Cmpt.

### b. Plaintiffs Reported Complaints to the Union, by Communicating Directly with Crull.

The Defendants disregard an important distinction in the language contained in the CBA concerning the *requirement* of the shop steward to bring a complaint and the *option* of an employee to bring her grievance. Section 39 of the CBA provides that the shop steward "shall" report employee complaints to the employer. Section 45 of the CBA provides that employees "may" bring their grievances to the employer. Accordingly, in order to have their complaints lodged and addressed, Plaintiffs were required only to bring them to the attention of a shop steward; the shop steward then had the obligation to bring the complaints to the employer and the union. The other avenues for reporting complaints, had they been viable, were only elective options for Plaintiffs, not mandatory requirements. Once Plaintiffs reported complaints to Crull, their obligation was fulfilled.

Both Defendants herein make a crucial error in understanding the facts. They argue that Plaintiffs had a responsibility to go above Crull within the Union in order to lodge complaints about Crull. However, Plaintiffs' complaints regarding work policies are the complaints at issue in the Union's breach of duty of fair representation. Plaintiffs' complaints regarding Crull herself are relevant to the exhaustion issue and the Hotel's breach of the CBA.

Because Plaintiffs have shown that they fulfilled their obligation in attempting to redress their complaints through internal procedures, they are not barred from bringing a § 301 claim for failure to exhaust their remedies.

### c. The Court Has Discretion to Excuse Exhaustion Requirements.

Exhaustion of internal union procedures may be excused at a court's discretion. *Clayton v. Int'l Union*, 451 U.S. 679, 684 (1981). Three factors are relevant in determining whether a court should exercise this discretion in a § 301 action: 1) whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim, 2) whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks, and 3) whether exhaustion would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Id.* at 689. "If any of these factors are found to exist, a court may properly excuse the employee's failure to exhaust." *Id.* As the Hotel notes, the 7th Circuit has also explained that a Plaintiff can be excused from exhaustion if pursuing the grievance procedure would be futile, if the employer through its conduct repudiated the grievance procedure itself, or if there has been a breach of the union's duty of fair representation. *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (2001).

Although the Plaintiffs have demonstrated that they have in fact exhausted their administrative remedies to no avail, the Court is within its discretion to excuse the exhaustion requirement for Plaintiffs. First, Plaintiffs have shown futility. The Shop Steward's purpose is to function as a conduit for communication between the Union members and the Hotel and to advocate for its members. When the person charged with that duty repeatedly refuses to fulfill that responsibility by ignoring the employees' legitimate concerns regarding policy changes and discouraging and disregarding their complaints, the process becomes futile. Furthermore, as

6

noted and as set forth in the First Amended Complaint, 105 employees signed an extraordinary petition setting forth their complaints with the way in which the Shop Steward was hostile to their concerns. Notwithstanding this petition, the Hotel failed to respond in any meaningful way, demonstrating that their grievance process was ineffective and futile.

Second, the Hotel claims that Plaintiffs do not allege any repudiation of grievances by the Hotel. However, the Plaintiffs contend the failure to respond to the petitions constitutes a repudiation. The formal grievance process includes bringing complaints to the employer. CBA § 46. The Hotel's refusal to act in response to the employees' concerns, evidenced in the petitions, constitutes an unambiguous repudiation of the grievance process on the part of the Hotel.

Third, as is argued below, there was a breach of duty of fair representation.

Finally, contrary to the Hotel and the Union's arguments, Plaintiffs are not be required to go beyond what is required by the CBA to pursue every avenue possible to have their complaints heard. The Hotel notes that there were other shop stewards. However, those shop stewards have themselves acknowledged the futility of attempting to go above or around Crull. Indeed, Gregory Jones, another shop steward, is a Plaintiff herein who also alleges that his efforts on behalf of employees were subverted by Crull's conduct. Am. Cmpt. ¶ 78. The Union cites *Hammer v. UAW, Local Union No. 550*, in which an employee's grievance at issue was the alleged mishandling of his unfair termination. *Hammer* is clearly distinguishable because the plaintiff in that case filed suit immediately when he discovered the alleged mishandling and **did not attempt to complain** to any union representative and was dismissed for failure to exhaust internal remedies. *Hammer v. UAW, Local Union No. 550*, 178 F.3d 856 (1999). The Union argues that Plaintiffs should have gone to a "designated representative," ignoring the fact that Crull *was* a designated representative, or directly to the union hall. This argument is an attempt

7

to place a burden on Plaintiffs that is not required of them by the CBA. It is improper to seek to impose upon the plaintiffs an additional requirement to have their complaints be heard by the very people they designated (and paid) to represent them.

Plaintiffs have shown that pursuing the internal process for their complaints would have been futile. The Hotel rejected the Plaintiffs' attempt to advise it of their complaints. The Hotel acquiesced in the egregious failure of the Shop Steward to represent their interests. Accordingly, the Plaintiffs have demonstrated that they indeed exhausted their administrative remedies, and to the extent that not all Plaintiffs have done so, they have sufficiently demonstrated futility.

### III. The Hotel Breached the CBA by Allowing the Shop Steward to Act Beyond Her Authority, and to Implement and Perpetuate Policies that Were Adverse to the Employees' Explicit Interests When it Knew Employees Were Dissatisfied with Crull's Conduct.

Both Defendants argue that there was no breach of the CBA because Plaintiffs were not afforded protections by the shop steward provision. Section 39 of the CBA clarifies the role of the Shop Steward: "Shop stewards shall not interfere with the management of the business or direct the work of any employee…The Shop Steward's duties shall not include any matters relating to referral, hiring, termination, or disciplining of employees." In its motion, the Union claims that the employees are not the intended beneficiaries of the shop steward provision. The Hotel interprets the provision as a reiteration of its rights and argues that the provision simply provides a baseline of what the Hotel must allow the shop steward to do. The Hotel then contends that it has simply not invoked its rights to limit Crull's power. However, this is an illogical and inconsistent argument concerning Crull's actual role as a cook with the Hotel. The Hotel essentially asks this court to believe that despite never having promoted Crull beyond her original position as a cook, the Hotel accepted Crull's authority to direct her coworkers (many with greater seniority, and in positions outside of the Hotel's kitchen) on their performance,

8

order employees to be written up, monitor security cameras to see if employees were on time or taking breaks, threaten to fire employees, and coordinate with management to implement gratuity policy changes. Am. Cmpt. ¶¶ 58, 84, 87, 89. These actions clearly constitute "direct[ing] the work of any employees" and involve "matters relating to…termination or disciplining of employees." Furthermore, the provision reads plainly that the shop steward "*shall not*" take on a management or directorial role. According to tenets of contract interpretation, "shall" is to be interpreted as mandatory. *BEM I, L.L.C. v. Anthropologie, Inc.*, 2000 U.S. Dist. LEXIS 18306 at *25. In no way does § 39 of the CBA grant the shop steward managerial powers or otherwise authorize the shop steward to engage in the conduct Crull is alleged to have done.

The Hotel is incorrect when it argues that it would have been powerless to reprimand or take issue with Crull's behavior without violating the CBA. The Defendant thus asks this Court to accept a self-serving statement about the responsibility given to a cook within the Hotel. Indeed, the Hotel does have an obligation to ensure that its Shop Stewards are permitted to fulfill their role, not only to bring forward complaints, concerns and grievances of employees to the Union, but also to convey issues of the Hotel's concern directly to the employees. If the Defendants' argument is accepted, then Crull and all shop stewards are essentially beyond reproach. Plaintiffs would be unable to cause the Union to take action to have Crull address to their complaints, and the Union would be powerless to cause the Hotel to act within its authority to ensure Crull acted appropriately in her role as shop steward. This would permit a shop steward to have unfettered influence over hiring and termination and policy decisions, and

9

employees would have no recourse.[1]  This is essentially the wrongful conduct which the Plaintiffs have alleged herein.

Finally, the Hotel argues that Plaintiffs do not meet the pleading requirements of *Iqbal*, cited above. However, Plaintiffs' Amended Complaint details many instances, providing the names of the alleging individuals and the approximate dates, to support its claims. Plaintiffs' allegations are detailed enough to provide the operative facts that provide Defendants with notice to understand what their claims are and the grounds upon which the claims rest.

## IV. The Union Breached its Duty of Fair Representation when the Shop Steward Refused to Process Employees' Grievances and Refused to Advocate for Employees' Interests.

A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171 at 190; *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (2013). A union acts arbitrarily if its behavior is "so far outside a wide range of reasonableness as to be irrational," that is, "without a rational basis or explanation." *Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1097 (2011). Particularly, when a complaint involves the union's failure to pursue a grievance, the plaintiff must show that the motivation for dropping the grievance was arbitrary or based on discriminatory or bad faith intentions. *Moore v. Roadway Express, Inc.*, 2008 U.S. Dist. LEXIS 64886 at *11. "Discrimination occurs when a union favors some of its members at the expense of others without legitimate purpose." *Id.*  Failure to act on grievances can be evidence of arbitrariness. *Yeftich*, 722 F.3d 911 at 916. "A union acts arbitrarily when it 'ignores or perfunctorily presses a meritorious claim," *Moore*, 2008 U.S. Dist. LEXIS 64886 at *14, citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 16 (2d. Cir. 1993). "A union acts

---

[1] Of course, if Crull were alleged to have engaged in conduct which the Hotel and Union opposed, such as terminating a key employee contrary to the request of the Hotel's management, clearly the Hotel would prohibit Crull's conduct.

arbitrarily by failing to take a basic and required step," such as failing to timely file a grievance. *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 426 (1998). Only an egregious disregard for union members' rights constitutes a breach of a union's duty, but the union must provide "some minimal investigation of employee grievances, the thoroughness of which depends on the particular case." *Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1176 (1995). Accordingly, to prevail on a claim of breach of duty of fair representation due to failure to process grievances, a plaintiff must show "1) that his grievances had merit, 2) that the union was aware of the grievances, and 3) that the union's conduct in failing to process the grievances was arbitrary." *Moore*, 2008 U.S. Dist. LEXIS 64886 at *15.

Because this comes on Defendants' motions to dismiss, the Court at this stage must assume that Plaintiffs made the substantive complaints to Crull, as alleged in the First Amended Complaint. *MJ & Partners Restaurant Ltd. Pshp.*, 10 F. Supp. 2d 922 at 926. Both Defendants argue that Plaintiffs' allegations lack specificity for purposes of a § 301 claim, however, the 7th Circuit has stated that "where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation, complaints should be construed whenever possible to avoid dismissals based on technical deficiencies in the specificity of the allegations." *Orphan v. Furnco Constr. Corp.*,466 F.2d 795, 804 (1972), citing *O'Mara v. Erie Lackawanna R.R.,* 407 F.2d 674, 679 (2d Cir. 1969), affirmed by *Czosek v. O'Mara*, 397 U.S. 25, 27 (1970). Furthermore, "as long as the complaint gives the defendant fair notice of the ground of plaintiffs' claim and it cannot be said with certainty that proof of any state of facts  in support thereof would entitle the plaintiffs to no relief, it should not be dismissed for insufficiency." *Id.*

Surely Plaintiffs have met this burden. Their Amended Complaint contains allegations of several specific instances where their complaints were ignored and undermined. Furthermore, the

11

Plaintiffs have given both defendants fair notice of the grounds of their claim. They specifically describe their interactions with Crull surrounding, for example, the changes in the Hotel's gratuity-sharing and days off policies, as the source of their complaints. Am. Cmpt. ¶¶ 54-69. Additionally, they allege ongoing managerial conduct by Crull that crossed the boundary of a Shop Steward's authority and that constituted advocacy on behalf of management, such as barring certain employees from meetings, refusing to discuss matters with employees who were not at meetings, enforcing Hotel policies that were unfavorable to the employees. Am. Cmpt. ¶¶ 74, 82, 65, respectively. In *Yeftich*, for example, the allegations lacked dates and names of union officials who allegedly falsely claimed to be processing grievances, in contrast to the explicit details provided by the Plaintiffs herein.

In arguing that Plaintiffs did not sufficiently allege a breach of the duty of fair representation, the Union incorrectly argues that Plaintiffs fail to show that it acted irrationally. The Union does not offer any standard for evaluating what could be considered irrational or any reasoning as to why Crull's denial of complaints or employees' interests regarding policy changes was not irrational. In *Estes v. Beta Steel Corp.* and *Marquez v. Screen Actors' Guild*, cited by the Hotel, the union activity found to be rational was a denial of a grievance with reasons detailed in writing and the negotiation of a faulty contract clause, respectively. *Estes v. Beta Steel Corp.,* 2006 U.S. Dist. LEXIS 81930; *Marquez v. Screen Actors' Guild*, 525 U.S. 33 (1998). A grievance that has gone through at least some process in order to be denied in writing and a contract negotiation are matters that clearly received the "minimal investigation" required on the part of the union. But a shop steward who dismisses employee complaints out of hand, without fulfilling her obligation to pass them along and without even a cursory reason as to why she is dismissing them is irrational (and is clearly arbitrary and in bad faith). Gratuities and

vacation days are not trivial matters of employment. There is no readily apparent rational reason why a shop steward, whose function is to advocate on behalf of employees and communicate their interests, would summarily and unilaterally disregard their concerns about these matters. Moreover, the underlying matter was not an isolated incident where a single complaint was disregarded, which could be considered a mistake on the part of the shop steward and union. Rather, Crull engaged in a pattern of disregarding and discouraging all complaints raised by employees. This behavior was no mistake or error in judgment, but rather was intentional, willful, in bad faith, and indeed irrational.

The Union then argues that there was no breach of duty of fair representation because Plaintiffs could have raised their complaints with other Union officials. This argument suggests, without any authority, that Plaintiffs should have gone beyond what was required of them in order to make their voices heard by the organization members whose very purpose is to listen to them. The fact that Plaintiffs did not bring their complaints to the entire organization does not mean that there was not a breach. Rather, the fact that they took their complaints to the union representative who was specifically designated to receive and report their complaints and were denied that process demonstrates that the union did in fact fail to fulfill its obligation and thus breached its duty.

### V.     The Union Breached its Fiduciary Duty to Plaintiffs by Refusing to Advocate on their Behalf or to Consider their Complaints.

In order to prevail on a breach of fiduciary duty claim a plaintiff must show: 1) a fiduciary duty existed, 2) the fiduciary duty was breached, and 3) the breach was the proximate cause of the plaintiff's injury. *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013). "To show a fiduciary duty, a party must show confidence reposed by one side and dominance and influence exercised by the other." *Cooper v. Chicago Transit Auth.*, 1996 U.S. Dist. LEXIS 6523 at *39. A

fiduciary relationship exists as a matter of law in certain relationships such as that between an agent and principal. *Ball*, 723 F.3d 813 at 826, citing *Kurtz v. Solomon*, 275 Ill. App. 3d 643, 656 (Ill.App. Ct. 1st Dist.1995). "The fiduciary duty of union officers under § 501 [of the Labor Management Reporting and Disclosure Act of 1959] is based on general agency principles. Union officers are viewed as agents for their principal, the membership." *Conley for Benefit of Local 1014, of United Steelworkers v. Parton*, 1984 U.S. Dist. LEXIS 17006, quoting *McNamara v. Johnston*, 360 F. Supp. 517, 526 (N. D. Ill. 1973). "While acting as an agent or employee, one owes a duty of fidelity and loyalty to the employer and, as a fiduciary, cannot act inconsistently with his or her agency." *Cooper*, 1996 U.S. Dist. LEXIS 6523 at *40. Thus, an agent, here the Union, breaches its fiduciary duty by acting against the direction of his principals, the members.

Clearly, a fiduciary duty existed between Plaintiffs and the Union. Plaintiffs, and other union members, by virtue of their membership in the Union, placed their trust and confidence in the Union to address matters of their employment, and the Union, by acting as a bargaining agent and conduit of employee grievances, exercised dominance and influence. As detailed above, Crull acted on behalf of the Union in her position as shop steward. Plaintiffs do not allege that the Union breached their fiduciary duty in their negotiation of the CBA, but rather in its vesting in Crull undue authority over the terms and conditions of employees, in refusing to acknowledge employees' complaints about the Hotel's change in policies, and in Crull's overt advocacy for the Hotel's policies rather than the interests of Plaintiffs and other employees. The employees brought the petition and grievances complaining of the new sick day policy and the gratuity policy to their Shop Steward, thereby informing Crull--and her principal the Union--of the employees' interests concerning these matters. Yet they undertook no action to advocate for

Plaintiffs and their fellow employees, and Crull actually worked to enforce the policies on behalf of the Hotel. This breach resulted in an implementation of Hotel policies that has disadvantaged Plaintiffs with lower earnings and more restrictive days off, among other things.

### Conclusion

For the reasons set forth above, the Plaintiffs respectfully request that the Defendants' Motions to Dismiss be denied.

Respectfully submitted,


s/Jeffrey Friedman
By one of the Plaintiff's attorneys


Jeffrey M. Friedman
LAW OFFICE OF JEFFREY FRIEDMAN, P.C.
Attorneys for the Plaintiff
120 S. State Street, Suite 400
Chicago, Illinois 60603
(312) 357-1431

# EXHIBIT A

# GRIEVANCE (AGRAVIO) INTAKE FORM

PLEASE **COMPLETE ALL** OF YOUR INFORMATION ON THIS FORM

POR FAVOR DE **COMPLETAR TODA** SU INFORMACIÓN EN EL FORMULARIO

Cyd Kirksey, Heather Hirsch
NAME /NOMBRE

330 N. Jefferson
ADDRESS /DIRECCIÓN

Chicago IL 60661
CITY/ STATE /ZIP   CIUDAD/ESTADO/CODIGO POSTAL

Bartender
CLASSIFICATION/JOB TITLE/PUESTO DE TRABAJO

11/16/07
DATE OF HIRE/FECHA DE CONTRATACIÓN

CydKirksey at aol.com
EMAIL ADDRESS/ Correo Electronico

08 / 23 / 13
TODAY'S DATE/FECHA DE HOY

(312) 493-0348
TELEPHONE NUMBERS/NÚMERO DE TELÉFONO

~~xxxxxx~~
SOCIAL SECURITY NUMBER/ SEGURO SOCIAL

Fairmont Hotel
EMPLOYER/ EMPLEADOR

Wally
SHOP STEWARD

---

Date(s) of occurrence/ Fecha(s) que ocurrió lo sucedido: 08 / 18 / 13

Date you discussed your issue with management/ Fecha que hablo con administración sobre el problema:
08 / 19 / 13

Did you bring your shop steward/Trajo a su shop steward?   ☐ YES/Sí  ☑ NO

Please tell us why you are filing a grievance, mark all that apply/Por favor díganos porque esta llenado el agravio y señale todos los que apliquen:

☐ Discipline, If Yes please **CIRCLE** the level of discipline that applies to you/ Si lo disciplinaron por favor señale cual disciplina(s) le dieron:

Verbal     Written   Suspension     Final written     Termination     Other

☐ Scheduled incorrectly
☐ Overtime/Tiempo extra
☐ Seniority/ Señoría
☐ Promotion/ Promoción
☐ Other/ Otro

☐ Holiday Pay/Pago festivo
☐ Vacation/Solicitud de vacaciones
☐ Layoff
☑ Improperly paid / Pago inapropiado

Please Explain what happened/ Por favor explique lo qué paso:

We worked a private party and was only paid 5% of gratuity all of a sudden. We have always split the gratuity because of all the special work that has to be done. We have to set the barbacks work, wash glasses, get liquor, reset bar and service

Witnesses/Testigos: _____

majority of guest.

## The Grievance Procedure

### YOU HAVE JUST FILLED OUT A GRIEVANCE FACT SHEET. WHAT HAPPENS NEXT?

1. The Union will do an initial investigation of the matter. If the Union does not think that there has been a contract violation, **no further action will be taken** and you will be notified.

2. If the Union thinks there may be a violation of the contract, an official, typed grievance letter will be filed with the Employer. We will request information from the Employer to further our investigation. They have seven (7) days to respond.

3. The Union will attempt to set up a meeting between you and the Employer within a month of the grievance being filed. At this meeting the Union representative and a shop steward will be there to speak on your behalf. We will not hold the meeting without you. If you are not available, the meeting will be cancelled. If you continue to be unavailable, the Union will withdraw your case.

4. If a meeting did not take place, or a settlement could not be reached within a month, the Union will make a determination to send the grievance to the next step in the grievance procedure or not. If at any point during the grievance procedure the Union decides to withdraw your grievance, you will be notified in writing.

5. The final step in the grievance procedure is arbitration. The Union does not arbitrate every grievance. Only those cases thought to have a good chance of success in arbitration will go forward.

6. Arbitration is similar to a trial but less formal. An arbitrator acts as a judge. He or She is a labor expert chosen to hear your case. Arbitration is a lengthy process, often it can take ten (10) months to eighteen (18) months for a final decision to be made.

7. It is important to keep in mind that while many grievances are resolved within the first few months from the date they are filed, other can take much longer. It is not uncommon for a grievance to go unsettled for more than one (1) year.

### WHAT ARE YOUR RESPONSIBILITIES AS THE GRIEVANT?

1. Always let us know where we can find you. If you change your address or telephone number, please notify the Union as soon as possible. If we are unable to locate you we must withdraw your grievance.

2. You are responsible to arrange for any witnesses that can present evidence on your behalf in any meetings between the Union and the Employer.

3. If you have been terminated be sure to file for unemployment and start looking for work as soon as possible. As described, the grievance process can take a very long time.

_Cup Kirksey_
**NAME**

_[signature]_
**Signature**

RECEIVED
AUG 23 2013
DATE
BY: _Sc._
Form received by - Date

UNITE HERE Local 1        55 W. Van Buren 4th Floor Chicago, IL 60605        312-6634373

# EXHIBIT B

# GRIEVANCE (AGRAVIO) INTAKE FORM

PLEASE **COMPLETE ALL** OF YOUR INFORMATION ON THIS FORM

POR FAVOR DE **COMPLETAR TODA** SU INFORMACIÓN EN EL FORMULARIO

Heather Hirschhorn
NAME /NOMBRE

3133 W Palmer Blvd #6
ADDRESS/DIRECCIÓN

Chicago IL 60647
CITY/ STATE/ ZIP   CIUDAD/ESTADO/CODIGO POSTAL

9/12/13
TODAY'S DATE/FECHA DE HOY

773 278 2469
TELEPHONE NUMBERS/ NÚMERO DE TELÉFONO

SOCIAL SECURITY NUMBER/ SEGURO SOCIAL

Fairmont Hotel
EMPLOYER/ EMPLEADOR

Bartender
CLASSIFICATION/JOB TITLE/PUESTO DE TRABAJO

Torrey
SHOP STEWARD

11/9/02
DATE OF HIRE/FECHA DE CONTRATACIÓN

EMAIL ADDRESS/ CORREO ELECTRONICO

Date(s) of occurrence/ Fecha(s) que ocurrió lo sucedido: 9/7/13 & 9/8/13

Date you discussed your issue with management/ Fecha que hablo con administración sobre el problema:

9/7/13

Did you bring your shop steward/Trajo a su shop steward?   ☐ YES/Sí   ☒ NO

Please tell us why you are filing a grievance, mark all that apply/Por favor díganos porque esta llenado el agravio y señale todos los que apliquen:

☐ Discipline, If Yes please **CIRCLE** the level of discipline that applies to you/ Si lo disciplinaron por favor señale cual disciplina(s) le dieron:

Verbal      Written    Suspension    Final written    Termination    (Other)

☐ Scheduled incorrectly

☐ Overtime/Tiempo extra

☐ Seniority/ Señoría

☐ Promotion/ Promoción

☑ Other/ Otro

☐ Holiday Pay/Pago festivo

☐ Vacation/Solicitud de vacaciones

☐ Layoff

☐ Improperly paid / Pago inapropiado

Please Explain what happened/ Por favor explique lo qué paso:

I was sent home on 9/7/13 after calling in sick for on day on Friday (with a sick day) I was not allowed to work Sat or Sun because my doctor was not in the office so I

Witnesses/Testigos: could get a doctor's note That they required

<u>The Grievance Procedure</u>

## YOU HAVE JUST FILLED OUT A GRIEVANCE FACT SHEET. WHAT HAPPENS NEXT?

1. The Union will do an initial investigation of the matter. If the Union does not think that there has been a contract violation, **no further action will be taken** and you will be notified.

2. If the Union thinks there may be a violation of the contract, an official, typed grievance letter will be filed with the Employer. We will request information from the Employer to further our investigation. They have seven (7) days to respond.

3. The Union will attempt to set up a meeting between you and the Employer within a month of the grievance being filed. At this meeting the Union representative and a shop steward will be there to speak on your behalf. We will not hold the meeting without you. If you are not available, the meeting will be cancelled. If you continue to be unavailable, the Union will withdraw your case.

4. If a meeting did not take place, or a settlement could not be reached within a month, the Union will make a determination to send the grievance to the next step in the grievance procedure or not. If at any point during the grievance procedure the Union decides to withdraw your grievance, you will be notified in writing.

5. The final step in the grievance procedure is arbitration. The Union does not arbitrate every grievance. Only those cases thought to have a good chance of success in arbitration will go forward.

6. Arbitration is similar to a trial but less formal. An arbitrator acts as a judge. He or She is a labor expert chosen to hear your case. Arbitration is a lengthy process, often it can take ten (10) months to eighteen (18) months for a final decision to be made.

7. It is important to keep in mind that while many grievances are resolved within the first few months from the date they are filed, other can take much longer. It is not uncommon for a grievance to go unsettled for more than one (1) year.

## WHAT ARE YOUR RESPONSIBILITIES AS THE GRIEVANT?

1. Always let us know where we can find you. If you change your address or telephone number, please notify the Union as soon as possible. If we are unable to locate you we must withdraw your grievance.

2. You are responsible to arrange for any witnesses that can present evidence on your behalf in any meetings between the Union and the Employer.

3. If you have been terminated be sure to file for unemployment and start looking for work as soon as possible. As described, the grievance process can take a very long time.

X _____        *Heather Hirschl* **RECEIVED**
**NAME**

_____                              SEP 12 2013
**Signature**                                           S.C.
                                                        **BY:** _____
                                                        Form received by - Date

UNITE HERE Local 1        55 W. Van Buren 4th Floor Chicago, IL 60605        312-6634373

# EXHIBIT C

**Subject:** Re: Aria Bar Party

**From:** Heather Hirschhorn (heatherchicago2002@yahoo.com)

**To:** mcrull@unitehere1.org;

**Date:** Thursday, August 22, 2013 2:30 PM

I have not heard back from you for the tip out for the liquor we served to the guests. Do you not have an answer? We should get the tip for the liquor no matter what, yet the way you had them do this pay out, you completely cut us out. You gave our tip to servers who did not even touch a cocktail. That was ours and at a minimum we deserve that.

---

From: Heather Hirschhorn <heatherchicago2002@yahoo.com>
To: Misti Crull <mcrull@unitehere1.org>
Sent: Tuesday, August 20, 2013 11:03 AM
Subject: Re: Aria Bar Party

Bartenders are not "tipped" employees but when we make a tip from serving guests, it is ours. Now you are saying that we are turning this tip over to the servers and they get to decide how much we are tipped. If we need to keep track of drinks served to guests to figure out a tip out, we can. But it is not right to have us just turn over all the money to the servers.

---

From: Misti Crull <mcrull@unitehere1.org>
To: Heather Hirschhorn <heatherchicago2002@yahoo.com>
Sent: Tuesday, August 20, 2013 8:39 AM
Subject: Re: Aria Bar Party

You are wrong. We asked them to generate a BEO which clearly outlines the cost of food and beverage and the terms (consumption, etc) so that Aria bar staff have a way to track how much they are owed. The BEO was made because we requested it so that you guys could track that you were paid correctly. There was an issue raised about a concierge party on may and we had no idea if you we're paid right or not until after we had the company pull document to support the payment.

Sent from my iPhone

On Aug 20, 2013, at 8:35 AM, Heather Hirschhorn <heatherchicago2002@yahoo.com> wrote:

I am not a banquet bartender but I was working a banquet event (it said so right on the top of the BEO), with a service charge added.

---

From: Misti Crull <mcrull@unitehere1.org>
To: Heather Hirschhorn <heatherchicago2002@yahoo.com>
Cc: misti.crull@fairmont.com

**Sent:** Tuesday, August 20, 2013 8:33 AM
**Subject:** Re: Aria Bar Party

What I told Rachel was that if she and All the other Servers wanted to tip out more, we could re-visit the 5%. Its my understanding that she is going to talk to them to see what they want to do. Regarding your quote below, you are not a Banquet Bartender which is the part of the CBA you quoted.

On Tue, Aug 20, 2013 at 8:19 AM, Heather Hirschhorn <heatherchicago2002@yahoo.com> wrote:
"Where beverages on which such a service charge is made are served from a bar, each bartender staffing said bar shall be paid a server's share of the service charge for beverages served from said bar." This is a direct quote from the contract. I don't see how we are not entitled to this. I also want to know why you tell Rachel they can only tip out the 5% and then tell me they had a choice to tip out more or not. I think we need to discuss this.

Heather

---

**From:** Misti Crull <mcrull@unitehere1.org>
**To:** Heather Hirschhorn <heatherchicago2002@yahoo.com>
**Cc:** misti.crull@fairmont.com
**Sent:** Tuesday, August 20, 2013 6:10 AM
**Subject:** Re: Aria Bar Party

Hi Heather

This was an agreed upon arrangement back in May 2011. I looked over all the notes from back then and everyone was made aware; including you. Servers were the ones who wanted this arrangement. You weren't happy about it then either but nonetheless, it is what it is. Here are some facts that are relevant. Bartenders are not tipped employees. Thats why your hourly wage rate is double what the Servers hourly wage rate is. They are tipped employees. There is nothing that requires Servers to tip out you or any other Bartender. There is nothing the company or the union can do to make them tip you out.

At the time the agreement was made, it was left up to the Servers to decide IF they wanted to include Bartenders in the "tip out" process for Aria Bar parties. They chose 5%. I am not sure when or why the Agreement stopped being enforced. I just found out about that last Thursday. Going forward the Company will enforce the Agreement. If at any time ALL of the Servers agree to increase the 5%, we can revisit the matter. Until then the Agreement stands.

Feel free to call me if you have further questions. 312-497-6692.

On Mon, Aug 19, 2013 at 12:30 PM, Heather Hirschhorn <heatherchicago2002@yahoo.com> wrote:
Hi Misty,

This is Heather from Aria Bar. I am upset and confused by the procedures that were used last night in regards to the tip for the party we worked. This 5 percent portion of the tip for the bartenders is inequitable and unfair. I am confused as to where this is coming from. You have brought this up before but then it was thrown out as not applying to the bar and we were dividing the tip equally as you told us to do. We adjusted for the difference in hourly between the servers and bartenders and

everyone made the same amount. I searched my copy of the contract and I do not see anything that states we only get 5 percent of the tip. I am not sure who this agreement you have brought up was made between, but this is not something that was ever discussed or agreed upon by us in the bar. Maybe we need to get an agreement for the bar separately. I am not happy that last night I worked really hard then found out that the servers were making all of the money. It makes me think that the servers should just bartend for themselves in buyouts now. Cyd and I personally served the majority of the drinks last night, as most of the guests at these types of parties come directly to the bar. We each made $80. The servers, some of whom did not serve a single drink, made $377 each. So the tips we should have made from at least the drinks we served, were distributed to the servers also. I don't want to bartend for parties if I am not going to make my fair share. It had been working really well before, sometimes we sold more alcohol, sometimes more food, but we all worked as a team, and were paid as a team.

We need to come up with a solution because I have no reason to go and work my ass off and see the servers walk away with all of the money.

Thank you
Heather

—
Misti Crull
Contract Enforcement Division
UNITEHERE Local 1
218 South Wabash
7th Floor
Chicago, Illinois 60604
312-497-6692
mcrull@unitehere1.org

—
Misti Crull
Contract Enforcement Division
UNITEHERE Local 1
218 South Wabash
7th Floor
Chicago, Illinois 60604
312-497-6692
mcrull@unitehere1.org

**Subject:** Re: grievance resolution

**From:** Heather Hirschhorn (heatherchicago2002@yahoo.com)

**To:** mcrull@unitehere1.org;

**Cc:** rachel.ambrosia@gmail.com; torrey.rinaldo@fairmont.com; cory3737@yahoo.com; walter.underwood@sbcglobal.net; marcusabi76@yahoo.fr;

**Date:** Saturday, September 21, 2013 2:16 PM

You showed yourself unwilling to talk to us when you sprang this grievance resolution on us after the party was worked, instead of coming to us. It especially insulting because it does not even apply to the party we worked. We tried to go through regular channels but you immediately threw out our greivance. I attempted to email you about this and you refused to listen and stopped responding to my emails. How does this show you are available for any kind of discussion? And how does using a grievance against the hotel's comped parties from two years ago, that does not apply to these situations show any regard or concern for all of your members? You chose to attack us for no reason, and you are using the union to further your own agenda. I knew there was no way you would ever admit you were wrong. I don't see any suggestions to talk now. You are the bully. You will not admit your fault or responsibility for this situation.

Heather

---

**From:** Misti Crull <mcrull@unitehere1.org>
**To:** Heather Hirschhorn <heatherchicago2002@yahoo.com>
**Cc:** Rachel Holland <rachel.ambrosia@gmail.com>; torrey.rinaldo@fairmont.com; cory fleming <cory3737@yahoo.com>; Wally Shop steward <walter.underwood@sbcglobal.net>; Kobla shop steward <marcusabi76@yahoo.fr>
**Sent:** Saturday, September 21, 2013 2:05 PM
**Subject:** Re: grievance resolution

The union is alway willing to discuss issues with our membership. But we will not be held hostage by our members when they throw tantrums because they don't get their way. You and the other bartenders embarrassed yourselves when instead of talking you chose to call off on the same day. I am so embarrassed for you all.

So as F&B outlets all over the city are being closed, the shop stewards have now got to spend extra time, to counter the damage you have done, letting Fairmont Executives know that we appreciate of all the effort they are putting into keeping our outlets open. We are appreciative for all the Bar parties they are selling. We are appreciative that they are trying to get business in the bar even when it's slow. I am grateful that the hotel continues to believe in the servers and appreciate their team effort to keep positive and provide great guest service even in light of your conduct.

Damage has been done. I suggest that you stop trying to bully your way into getting what you want and start trying to mend some fences.

Sent from my iPhone

On Sep 21, 2013, at 2:32 PM, Heather Hirschhorn <heatherchicago2002@yahoo.com> wrote:

Well, I don't know if you will answer me. But I am going to write this anyways. I went to Marta and got a copy of the grievance resolution. I was surprised to see that this grievance was not against the bartenders but against the hotel over comped parties. None of the parties we have been doing have been comped parties. It clearly states that this grievance was for comped parties, billed directly to sales. I am not sure how the bartenders have now come under attack. I pay my union dues, just like everyone else. The union is to support all members, not just a chosen few. I expect to, at least, have a conversation about this, not a stonewalling. Hopefully with the copy of this grievance resolution, which I have also given to management, we can resolve this problem and get past all this ugliness this has caused in our work environment. I will be giving a copy to Rachel also, with the pertinent portion of the resolution highlighted.

Thank you
Heather Hirschhorn